## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| VALERIE WALENCIK, individually and on behalf of all others similarly situated, : : : : | |
| Plaintiff, : : | Case No: 2:24-cv-11713 |
| v. : : | Hon. David M. Lawson |
| KOSTAL KONTAKT SYSTEME, INC., a Michigan corporation, : : : : : | Mag. David R. Grand |
| Defendant. : : | |

## RENEWED JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT

Plaintiff Valerie Walencik ("Plaintiff") and Defendant Kostal Kontakt Systeme, Inc. ("Defendant") (collectively the "Parties") hereby file this Renewed Joint Motion for Approval of FLSA Settlement related to the proposed settlement reached by the Parties and memorialized in the Settlement Agreement and Release ("Settlement" or "Agreement"), attached hereto as **Exhibit 1** and respectfully request that the Court grant this Renewed Joint Motion for Approval of the FLSA Settlement, including the proposed form of notice.

I.        **Factual Background and Procedural History**

The above-captioned action asserts unpaid overtime claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, on behalf of non-exempt employees of Defendant.

On July 2, 2024, the named Plaintiff filed this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiff initiated this action on behalf of herself and all other persons similarly situated, seeking damages for alleged violations of the FLSA (hereinafter referred to as the "Lawsuit").  *See* ECF No. 1.  In general, Plaintiff claims that Defendant failed to properly calculate its employees' overtime rates under the FLSA. Defendant denies the allegations made by Plaintiff.

On March 20, 2025, the Parties stipulated to a stay of the case (ECF No. 20) and scheduled a mediation with Dennis Clifford.  After engaging in informal discovery, including the production of payroll records for all of Defendant's hourly employees, the Parties retained their own respective analysts to create competing damage models, and the Parties then engaged in settlement discussions. The Parties mutually and voluntarily agreed to a settlement of the Lawsuit prior to the scheduled mediation. The Settlement covers approximately 148 employees who are included in the collective previously designated by the Court: "All of Defendant's current and former hourly employees who worked for Defendant in

the United States at any time in the past three years and received shift differential pay in the same workweek(s) as they incurred overtime hours." (ECF No. 29).

The Agreement provides that, in consideration of the settlement amount, the Lawsuit will be dismissed with prejudice.

## II.     Settlement Terms and Documents

The Parties submit the following documents for the Court's review and approval:

Exhibit 1:    Settlement Agreement (with proposed settlement notice)

Exhibit 2:    Individual Settlement Payment Allocations Chart

Exhibit 3:    Declaration of Plaintiffs' Counsel, Jesse L. Young

The Gross Settlement Amount is $35,000, which is inclusive of payment for: (i) the issuance of Individual Settlement Payments to 148 putative collective members (Eligible Employees), (ii) a Service Award to named Plaintiff, Valerie Walencik, and (iii) payment for Attorneys' Fees and Litigation Expenses. (**Exhibit 1**).

### A.     Individual Settlement Payments

The Individual Settlement Payments are calculated on each Eligible Employees' alleged damages during the Relevant Period, applying the FLSA regular rate formulas to Defendant's payroll data. (**Exhibit 2**). The individual Settlement Payments will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). Exhibit 1 at G.2.

3

**B.     Service Award**

Defendant will pay $2,000 to Plaintiff Valerie Walencik in addition to her Individual Settlement Payment, for her service as the Named Plaintiff. Exhibit 1 at F.3.

**C.     Attorneys' Fees, Costs, and Settlement Administration Fees**

Plaintiff's Counsel will receive an attorneys' fees in the amount of $18,500, plus an additional reasonable amount for the litigation expenses in the amount of $2,522.38. Exhibit 1 at F.4.  The amount of fees received by Plaintiff's Counsel is less than the actual lodestar incurred in litigating this case. (**Exhibit 3**, Young Decl. at ¶ 43).

The Settlement Agreement also contemplates settlement administration fees. In addition to the $35,000 Gross Settlement Amount, Defendant will separately pay for the settlement administration fees and the mediator's cancellation fee. Exhibit 1 at B.3 and B.4.

**D.     Release of Claims**

The negotiating of a settlement check by any Eligible Employee makes them a Participating Plaintiff and provides sufficient consideration for his or her release of claims. Exhibit 1 at G.4. Eligible Employees will have one hundred eighty (180) days after the Settlement Notice Packets are mailed in which to deposit or otherwise negotiate their settlement checks. *Id.* However, settlement checks not cashed or negotiated within 180 days may be reissued once if the Parties mutually

4

agree, or if the Settlement Administrator determines that there is good cause to do so with respect to any particular settlement check(s). *Id.* If any Eligible Employee does not negotiate his or her settlement check within 180 days of issuance, or thirty (30) days after reissuance of the settlement check, whichever is later, the funds will be retained by Defendant. *Id.*

The Eligible Employees will be subject to a specific release of wage and hour claims arising between July 2, 2021 through December 31, 2024. *Id.* at H.1. Each Individual Settlement Payment issued to Eligible Employees will contain the following release language on the back of the check.

> I knowingly and voluntarily release, waive, and discharge Kostal Kontakt Systeme, Inc., and all other Released Parties, from any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during my employment working at Kostal Kontakt Systeme, Inc. between July 2, 2021 through December 31, 2024, including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

*Id.* at H.1.

### E.    Notice of Settlement of Lawsuit

The Parties will retain a third-party entity (the "Settlement Administrator") to perform the duties necessary to send "Settlement Notices" and Individual Settlement payments to each Eligible Employee. "Settlement Notice" means the written notification that each Eligible Employee will receive, which explains the settlement and their right to participate, a copy of which is attached as Exhibit A to

the Agreement**.** (Exhibit 1). The Settlement Notice and Individual Settlement Payment shall be mailed by the Settlement Administrator to each Eligible Employee within twenty-one (21) days after the entry of an Order by this Court approving the Parties' Settlement. *Id*. at G.1.

## III. Law and Argument

### 1. The Settlement is a Fair and Reasonable Resolution of a Bona Fide Dispute.

Historically, the prevailing view has been that "[j]udicial approval of settlement agreements in FLSA cases is necessary for an agreement to be enforceable." *Zambrano v. Motorcity Burger Co*., 2017 WL 1477111, at *2 (E.D. Mich. Apr. 25, 2017); *see also, Cruz v. Don Pancho Mkt., LLC*, 2016 WL 4531142, at *2 (W.D. Mich. Aug. 23, 2016) (internal citation omitted). "The need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, *3 (E.D. Ky. Oct. 23, 2008).[1]

---

[1] More recently, however, many district courts in this Circuit have reached the conclusion that court approval is not required. *See Askew v. Inter-Continental Hotels Corp.*, 2022 WL 3161927 (W.D. Ky. Aug. 8, 2022) (court approval of FLSA settlements is not required); *see also Reed v. M3K, LLC*, 2023 WL 8440262 (E.D. Tenn. Dec. 5, 2023) (same); *Gilstrap v. Sushinati LLC,* --- F. Supp. 3d ---, 2024 WL 2197824, at *1 (S.D. Ohio May 15, 2024) (same). A growing number of district courts within the Sixth Circuit have found the reasoning in *Gilstrap* persuasive and held that court approval of FLSA collective action settlements is not required. *See Reid v. Peterson Farms, Inc.,* 2024 WL 5374819, at *1 (W.D. Mich. Dec. 9, 2024) ("This Court adopts the reasoning in *Gilstrap* and finds that the Court does not have any obligation or authority to approve the parties' settlement agreement."); *Barrios v. Kamps, Inc.*, 2024 WL 4181210, at *1 (W.D. Mich. Sept. 12, 2024) ("This Court adopts the reasoning in *Gilstrap* and finds that the

The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).

In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 594-95 (E.D. Mich. 2006). As shown below and in the Young

---

Court does not have any obligation or authority to approve the parties' settlement agreement."); *Cataline v. Beechmont Brewing*, LLC, 2024 WL 4313715, at *1 (S.D. Ohio Sept. 26, 2024) ("This Court agrees with the opinion in *Gilstrap* and joins the trend emerging in this District of eliminating the prudential condition that requires district court approval of FLSA settlements."); *Stephens v. Auto Sys. Ctrs., Inc.*, 2024 WL 4577862, at *1 (S.D. Ohio Oct. 22, 2024) ("The undersigned finds the reasoning of *Gilstrap* persuasive and concludes that Court approval of the parties' FLSA settlement is neither required nor authorized."); *Berner v. PharMerica Logistics Servs., LLC*, 2024 WL 5147039, at *3 (W.D. Ky. Dec. 17, 2024) ("In short, the text of the FLSA does not require court approval prior to settlement or dismissal nor is there binding case law to that effect. Also for the same reasons set out in *Gilstrap*, this Court likewise concludes that it lacks the authority to approve or reject FLSA settlements. Furthermore, the Court agrees that Rule 41 of the Federal Rules of Civil Procedure governs the dismissal of FLSA claims."); *Evans v. RWS Res., LLC*, 2025 WL 354715, at *2 (W.D. Ky. Jan. 31, 2025) ("[T]he Sixth Circuit has never cited *Lynn's Food Stores*, and the more recent trend is to reject the Eleventh Circuit's reasoning to the extent it may require court approval of ordinary FLSA collective action settlements…" The court in *Evans* explained that "it lacks authority to provide judicial approval of FLSA collective-action settlements because there is no FLSA [or] any binding Sixth Circuit precedent requir[ing] or authoriz[ing] district court approval of FLSA collective-action settlements…"). The Sixth Circuit has not weighed in on the issue.

Declaration (Exhibit 3), the standard supports the Settlement Agreement's approval.

## A. No Indicia of Fraud or Collusion Exists

Plaintiffs' Counsel has extensive experience litigating claims under the FLSA. (*See generally*, Exh. 3, Young Declaration). The Agreement was achieved after arms-length and good faith negotiations between the Parties, assisted with damage analysis performed by an expert economist. As such, there is no indicia of fraud or collusion.

## B. The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies forcefully here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.

Defendant claims that even if Plaintiffs could succeed on the merits (which it contends Plaintiffs cannot), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. In addition, the Parties disagree as to: (i) whether final collective treatment would be granted; (ii) whether liquidated damages would be awarded; and (iii) whether Plaintiffs could establish an underlying violation of the FLSA.

Additionally, Defendant raised numerous defenses to Plaintiffs' claims including, but not limited to the following:

a. Various forms of incentive compensation paid by Defendant to the collective members are discretionary and do not need to be computed into the FLSA regular rate.

b. The collective members were paid double time in connection with various shifts, and Defendant is allowed to offset the double time payments against alleged regular rate damages.

c. Plaintiffs and all other collective members were paid for all work performed.

(Exh. 3, Young Decl. at ¶¶ 16, 27).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Parties would need to engage in extensive briefing and/or oral argument regarding collective certification, decertification, and summary judgment. Discovery would be expensive and time-consuming, given the continued factual and legal disputes between the Parties. It is very likely that this litigation would extend for another two to three years and cost the parties $1000,000 to $200,000 (likely more) each in attorneys' fees and expenses. (*Id.* at ¶ 28).

The Settlement Agreement, by contrast, provides prompt, efficient, and substantial relief to Plaintiffs and all Eligible Employees, and amplifies the benefits of that relief through the economies of collective resolution.

### C. Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Relevant information was exchanged including exhaustive

data regarding the Eligible Employees' time and payroll records. Specifically, Plaintiffs' Counsel reviewed and analyzed the following materials:

   a.   Information pertaining to the number of putative collective members employed by Defendants during the statute of limitations period applicable to the case, along with metrics related to: rate of pay; dates of employment; location worked; hours worked per week; total weeks worked; total shifts worked; and hours worked per week;

   b.   Data modeling and damage analysis related to alleged regular rate violations;

   c.   Voluminous time and pay records;

   d.   Documents provided to counsel by the Plaintiffs.

(Exh. 3, Young Decl. at ¶¶ 17-18).

Additionally, the Parties' counsel conducted numerous conferences and exchanged correspondence on Plaintiffs' claims, Defendants' defenses, and the scope of discovery for mediation and beyond. (*Id.* at ¶ 17).

To evaluate damages and negotiate settlement, Plaintiff's Counsel retained expert economist Eric Lietzow of Desmond, Marcello & Amster, LLC. Mr. Lietzow, with Plaintiffs' Counsel's assistance, prepared a time-consuming and complicated damage analysis of all claims at issue in this case. (*Id.* at ¶ 29).

There can be no question that all aspects of the dispute are well-understood, and were competently negotiated, by both sides.

### D. The Risks of Litigation Favor Approval

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiffs' likelihood of success at trial. Plaintiffs' claims are based on disputed issues of fact and law, and Plaintiffs' success at trial is far from guaranteed. In sum, although Plaintiffs assert that the claims are meritorious, the action certainly is not without risk. This factor thus weighs in favor of approval.

Counsel for both Parties believe in the merits of their respective clients' positions but nonetheless recognize that litigation is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises multiple defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all and at each stage, including certification, decertification, summary judgment, and trial.

Even if Plaintiffs succeed on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree. A jury could find that Defendant acted in good faith – a finding of no willfulness would mean a one-third reduction in collective wide damages. Additionally, a jury may decide to not award any liquidated damages. Any of these scenarios could

result in a monetary award of less than the amount obtained through this settlement.

### E. Counsel and Named Plaintiffs Favor the Agreement

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, Plaintiffs' Counsel believes the settlement is fair, reasonable, and adequate. Plaintiffs' Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their client in negotiating the settlement. (*See* Exh. 3). The Named Plaintiffs have been fully informed and involved in the settlement process and agree to the Settlement Agreement. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### F. Absent Class Members' Reaction

The absence of class member objections is indicative of class support of a settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). In the present case, unlike a Rule 23 Class Action settlement, there are no "absent" class members, and each Eligible

Employee has the option of participating in this case (i.e., the Settlement). The Eligible Employees are not bound by the Settlement unless they negotiate the Individual Settlement Payment they are issued. As such, any members who choose not to participate are free to do so without taking any action or making any objection.

### G. Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The Settlement ends complex litigation that has been pending for nearly 1.5 years and provides substantial relief to the Eligible Employees and avoids protracted, costly litigation. *See Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 905-06 (S.D. Ohio 2001). The Settlement Agreement's terms are equitable and provide a reasonable resolution to the action. Continued litigation would increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of the potential putative plaintiffs. In fact, rulings by this Court or a jury verdict could result in a lower recovery for the Eligible Employees if this Court or a jury were to rule in Defendant's favor on disputed fact and law issues.

### 2.    The Settlement Distributions are Fair, Reasonable, and Adequate

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urb. Cnty. Gov't*, 2008 WL 4724499, at *9 (E.D.

Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the settlement is fair, reasonable, and adequate for Plaintiffs and the Eligible Employees.

### A. Plaintiffs' Counsel's Requests for Fees and Litigation Expenses Reasonable and Appropriate in this Case.

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Payment of attorneys' fees are *mandatory* under the FLSA, the amount of which has carries no relation to the amount of damages ultimately recovered by a plaintiff.  *See e.g., Williams v. Hooah Sec. Servs. LLC*, 2012 U.S. Dist. LEXIS 40945, *4 (W.D. Tenn. Mar. 26, 2012) ("the amount of attorney's fees may exceed the amount of damages awarded to plaintiffs given the nature and purpose of the FLSA . . .") (*citing Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994); *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) ("An award of attorney fees [under the FLSA] may exceed the amount in controversy.") (*citing Michigan Window Cleaning Co. v. Martino*, 173 F.2d 466 (6th Cir. 1949)). The FLSA's attorneys' fees provision seeks to ensure "effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (internal

quotation marks omitted). In calculating the fee award, the Court should not put undue emphasis on the amount of the plaintiffs' recovery because an attorney fee award in a FLSA case "encourage[s] the vindication of congressionally identified policies and rights." *Id.* at 1134-35 (internal quotation marks omitted) (alteration in original). In enacting the FLSA, Congress intended that the wronged employee should receive his or her full wages "without incurring any expense for legal fees or costs." *Roofers, Local 307 v. G & M Roofing*, 732 F.2d 495, 502 (6th Cir. 1984) (*citing Maddrix v. Dize,* 153 F.2d 274 (4th Cir. 1946)).

To date, Plaintiffs' Counsel has incurred 53.1 hours and $27,689 in attorneys' fees. It is anticipated that at the conclusion of this case (including work related to settlement administration and Eligible Employee payment processing (estimated to equal additional lodestar in the range of $7,500 to $15,000), that Plaintiffs' Counsel will have accumulated a lodestar in an amount that, based on the requested fee amount, will result in a negative multiplier. (Exh. 3, Young Decl. at ¶ 43).

### B. The *Ramey* Factors

To ensure a fee is reasonable, courts also analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). The *Ramey* factors include: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a

contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 WL 3957364, *1 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fees and costs.

*First*, Plaintiffs' counsel's work resulted in a significant benefit to the Eligible Employees whereby each person will receive Individual Settlement Payment that is based on their actual payroll data. To receive this money, the Eligible Employees only need to cash or deposit their settlement checks, which will be provided to them by a third-party settlement administrator, along with the Settlement Notice. Further, the Court should find that Plaintiffs' Counsel obtained an excellent result by way of procuring a settlement equal to 218.67% of Defendant's $16,005.46 maximum damage exposure. Further, the $11,977.62 Net Settlement Fund that will be allocated to the Eligible Employees equates to 74.83% of Defendant's maximum damage exposure. (Exh. 3, Young Decl. at ¶ 31). Thus, this factor supports the proposed fee award.

*Second*, it is widely acknowledged that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources. The attorneys who take on class action cases enable this benefit. *See Moore v. Aerotek, Inc.*, 2017 WL 2838148, *8 (S.D. Ohio June 30, 2017) (citation omitted). The societal benefit is particularly acute in wage-and-hour cases brought on behalf of workers.  In order for attorneys to take on these cases, which, in the class and collective action setting, are complex and difficult cases, attorneys must be fully compensated for their work. Society has a stake in rewarding attorneys who achieve a result that the individual class members likely could not obtain on their own. *Id.*

*Third*, Plaintiffs' Counsel litigated this matter on a wholly contingent basis with no guarantee of recovery.  This supports the proposed fee award.

*Fourth*, a lodestar cross-check, while not required, also supports Plaintiffs' Counsel's fee request. *Mitchell v. Indep. Home Care, Inc.*, 2019 WL 696941, *7 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019).  Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. Plaintiffs' Counsel submitted a detailed Declaration in support of the requested attorneys' fees and litigation expenses. (Exh. 3).

The Court should also be aware that Plaintiffs' Counsel's work does not end at settlement approval.  Plaintiffs' Counsel frequently spends additional time,

sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters, and such additional work is expected in this case.

*Fifth*, as noted above, this was a complex wage-and-hour collective action. The Court should find that this factor weighs in favor of approving the fee.

*Sixth*, and finally, Plaintiffs and Defendant are represented by experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. Counsels' professional skill and standing support approving the fee.

For these reasons, the Court should determine that the requested fees and litigation expenses are reasonable, and approve the request for attorneys' fees in the amount of $18,500 and litigation expenses of $2,522.38.

### C. The Service Awards to the Named Plaintiffs are Fair and Reasonable

The Parties request approval of service awards to the named Plaintiff, Valerie Walencik, in the amount of $2,000. "[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone." *Dallas v. Alcatel-Lucent USA, Inc.*, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013); *see also Griffin v. Flagstar Bancorp. Inc.*, 2013 WL 6511860, at *9 (E.D.

18

Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit").

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when class representative spent "time and effort . . . all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the benefit of absent Class members")); *Velez v. Majik Cleaning Serv.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation. *See, e.g., Bert v. AK*

*Steel Corp.*, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008). Here, Plaintiff satisfies all three factors.

*First*, Ms. Walencik has been involved in this action since the pre-suit investigation that gave rise to this action. (Exh. 3, Young Decl. at ¶ 45). She participated in the pre-suit investigation, provided documents and information crucial to the evaluation and pursuit of the claims, assisted in preparation for mediation, and participated in settlement negotiations. (*Id*.) These actions resulted in substantial benefit to Eligible Employees, leading to a favorable settlement.

*Second*, Ms. Walencik undertook substantial direct and indirect risk. She brought the action in her name and agreed to testify at deposition and trial. (*Id*.) In doing so, she assumed the risk of retaliation and blacklisting. *Id*.; *see Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending her name to the litigation, she has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *see also Bozak v. FedEx Ground Package Sys., Inc.*, 2014 WL 3778211, at *9 (D. Conn. July 31, 2014) (lead plaintiff "assumed risk of retaliation"); *Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"). *See also Sewell v.*

*Bovis Lend Lease, Inc.*, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[ed] potential risks of being blacklisted as 'problem' employees.").

*Third*, Ms. Walencik spent significant time and effort pursuing this litigation on behalf of the Eligible Employees.

Additionally, the amount of the requested service award is reasonable and consistent with awards that have been granted in employment class and collective actions in FLSA cases in this District and elsewhere. *See Pieber v. SVS Vision, INC.*, 2022 WL 687248, at *1 (E.D. Mich. Mar. 8, 2022) (approving service awards of $6,000 and $3,000 to representative plaintiffs where total settlement amount was $200,000); *Mullins v. S. Ohio Pizza, Inc.*, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019) ($10,000 service award for each named plaintiff); *Arledge v. Domino's Pizza, Inc.*, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) ($10,000 service award for each named plaintiff); *Castillo v. Morales, Inc.*, 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015) (awarding $8,000 service payment to class representative in wage and hour case).

### D. The Settlement Notice is Adequate

An FLSA notice must be "accurate and timely" and provide sufficient information so that putative class members "can make informed decisions as to whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170

(1989). The proposed Settlement Notice in this case is timely, accurate, and informative, as it provides the following information:

- The definition of the settlement collective;

- The nature of the action;

- The claims alleged;

- Information as to how to participate or not participate in the action and settlement;

- Information regarding the service award to the Named Plaintiff and attorneys' fees and litigation expenses;

- Binding effect of joining the action and settlement;

- The release language involved; and

- Contact information for counsel.

See *Wade v. Werner Trucking Co.*, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014 (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement"); *Gentrup v. Renovo Servs., LLC*, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011) (same).

Further, this form of notice has been approved in many other similar FLSA settlements involving Plaintiffs' Counsel. *See e.g.*, *Rupert v. Magna Modular Systems, Inc*., No. 2:23-cv-12289 (E.D. Mich. April 14, 2025) (ECF No. 32); *Geer v. TH Plastics, Inc*., No. 1:23-cv-01058 (W.D. Mich. July 30, 2024) (ECF No. 30).

## IV.    Conclusion

The settlement reached is a fair and reasonable compromise of the respective positions of both sides.  The Parties therefore respectfully request that the Court grant this Renewed Joint Motion for Approval of FLSA Settlement.

Dated:  September 18, 2025                       Respectfully submitted,

*/s/ Jesse L. Young*                              */s/Brett J. Miller*
Jesse L. Young (P72614)                        Brett J. Miller (P68612)
**SOMMERS SCHWARTZ, P.C.**                       Blaine Veldhuis (P78840)
141 E. Michigan Avenue, Suite 600              **BUTZEL LONG**
Kalamazoo, Michigan 49007                      150 W. Jefferson, Ste. 100
(269) 250-7500                                 Detroit, MI 48226
jyoung@sommerspc.com                           (313) 225-5316
                                               millerbr@butzel.com
*Attorneys for Plaintiffs*                       veldhuis@butzel.com

                                               *Attorneys for Defendant*