**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| VALERIE WALENCIK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KOSTAL KONTAKT SYSTEME, INC., a Michigan corporation,<br><br>Defendant. | : | Case No: 2:24-cv-11713<br><br>Hon. David M. Lawson<br><br>Mag. David R. Grand |

**SUPPLEMENTAL BRIEF IN SUPPORT OF RENEWED JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT [ECF 30]**

Plaintiff Valerie Walencik ("Plaintiff") and Defendant Kostal Kontakt Systeme, Inc. ("Defendant") (collectively the "Parties") hereby file this Supplemental Brief in Support of Renewed Joint Motion for Approval of FLSA Settlement pursuant to the Court's request during the September 30, 2025 approval hearing.

## I. Background

To recap the relevant issue, the Parties' settlement agreement provides that the Settlement Administrator will send the settlement Notice and Individual Settlement Payment to each Eligible Employee and the negotiation of a settlement

check by any Eligible Employee makes them a Participating Plaintiff and provides sufficient consideration for his or her release of claims. ECF No. 30, Settlement Agreement at Section G. If any Eligible Employee does not negotiate his or her settlement check within 180 days of issuance, they will not be a Participating Plaintiff, will not release any claims, and will retain all of their FLSA rights.

The Participating Plaintiffs will be subject to a specific release of wage-and-hour claims arising between July 2, 2021 through December 31, 2024. *Id.* at H.1. Each Individual Settlement Payment issued to Eligible Employees will contain the following release language on the back of the check.

> I knowingly and voluntarily release, waive, and discharge Kostal Kontakt Systeme, Inc., and all other Released Parties, from any and all federal, state, and local wage-and-hour claims of any nature whatsoever that accrued during my employment working at Kostal Kontakt Systeme, Inc. between July 2, 2021 through December 31, 2024, including, but not limited to, all federal, state, and local claims for overtime, minimum wage, and related penalties, interest, liquidated damages, attorneys' fees, and costs.

*Id.* at H.1.

During the September 30, 2025 approval hearing, the Court expressed concern regarding the Parties' proposed procedure of notification and sending checks with release language on the back, and whether such a process meets the "opt-in" requirements of the FLSA. As stated below, the Parties reiterate their understanding that this proposed settlement process meets all FLSA requirements.

## II. Law and Argument

### A. The Court has broad discretion

As an initial matter, the Court has broad discretion to approve and shape the procedures and the form and content of the notice and consent forms, including the scope of the applicable releases. *See Hoffmann-La Roche*, 493 U.S. 165, 169 (1989). The Court must assure that plaintiffs who decide to join a collective action are allowed to do so in "an efficient and proper way" that is "orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id*. at 170-71.

### B. The opt-in consent requirement under Section 216(b)

The FLSA states, in part:

> An action to recover the liability prescribed in the [FLSA] may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

The Sixth Circuit has described the FLSA opt-in requirement as follows: "Employees can sue in their own behalf and for 'similarly situated' persons. Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart*

*Stores, Inc*., 454 F.3d 544, 546 (6th Cir. 2006); *see also Holmes v. AmerCable Co*., 2025 WL 978599, at *8 (W.D. Ark. Mar. 31, 2025) ("There is no physical signature requirement in FLSA cases, it only requires that opt-in consent be 'in writing.'"); *Houck v. Maricopa Cnty*., 2023 WL 7018061, at *3 (D. Ariz. Oct. 25, 2023) ("courts look to whether the written consent form clearly indicates consent by the opt-in plaintiff to join the lawsuit."); *Stephenson v. Fam. Sols. of Ohio, Inc*., 2020 WL 6685301, at *6 (N.D. Ohio Nov. 12, 2020) (electronically signed consent forms were acceptable for filing in an FLSA case).

In sum, there is no designated form that FLSA consent forms should or must take. As long as the document is written and indicates a desire to join the case, the FLSA's statutory requirements are satisfied.

**C. The Parties' settlement structure advances the FLSA's remedial goals and ensures a drastically higher participation rate**

"'Congress passed the FLSA with broad remedial intent,' to address 'unfair method[s] of competition in commerce' that cause 'conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Monroe v. FTS USA, LLC*, 815 F.3d 1000, 1008 (6th Cir. 2016) (quoting *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015); 29 U.S.C. § 202(a)). "To effectuate Congress's remedial purpose, the FLSA authorizes collective actions 'by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.' " *Ibid.*

(quoting 29 U.S.C. § 216(b)). The overarching goal of the FLSA is to facilitate the public policy of allowing employees to collect wages owed to them by their employers.

One of the obstacles in satisfying the FLSA's remedial scheme is the "opt-in" requirement and the resulting low participation rate. It is well-known among wage-and-hour practitioners and courts that the typical opt-in participation rate in FLSA collective actions is approximately 15-30 percent. *See e.g.*, *Stacy v. Jennmar Corp. of Virginia, Inc*., 2022 WL 1442246, at *1 (W.D. Va. May 6, 2022) ("The plaintiffs currently have an opt-in rate of approximately two percent, which is a fraction of the typical 15 to 30 percent opt-in rate for FLSA collective actions."); *Kuncl v. Int'l Bus. Machines Corp*., 660 F. Supp. 2d 1246, 1250 (N.D. Okla. 2009) ("Historically, the FLSA's opt-in mechanism has limited the size of the FLSA action, with estimates indicating that typically only between fifteen and thirty percent of potential plaintiff-employees opt-in.") (citation omitted); *see also Wood v. Saroj & Manju Invs. Phila. LLC*, 2021 WL 1945809, at *7 (E.D. Pa. May 14, 2021) (holding that a 20% participation rate in FLSA settlement was "very high"); *Ditsworth v. P & Z Carolina Pizza*, 2021 WL 2941985, at *3 (W.D. Ky. July 13, 2021) (considering an opt-in rate of 20.7% to be favorable); *Kritzer v. Safelite Sols., LLC*, 2012 WL 1945144 (S.D. Ohio May 30, 2012) (identifying a 16.2% opt-in participation rate for a FLSA collective action).

Likewise, this Court has observed that the opt-in rate in FLSA settlements that are structured as a ***two-step settlement process*** (i.e., first sending settlement notice and consent forms, and then sending checks to those who opt-in) fall within a similar range. *See Bourne v. Ansara Rest. Grp., Inc.*, 2016 WL 7405804, at *2 (E.D. Mich. Dec. 22, 2016) (Lawson, J.) ("[T]he [27.6%] participation rate of claimants mirrors a typical rate seen in similar litigation."). More recent examples include:

- *Clarke v. ADCO Products, Inc.*, Case No. 23-cv-11648 (E.D. Mich.) (administrator declaration stating that only **22.27%** of eligible employees submitted consent forms to join the settlement) (***Exhibit 1***); and

- *Underhill v. Dicastal North America*, Case No. 24-cv-00689 (E.D. Mich.) (administrator report stating that only **20.06%** of eligible employees submitted consent forms to join the settlement) (***Exhibit 2***);

However, in FLSA settlements involving a ***one-step settlement process*** (i.e., sending settlement notice and checks together in one mailing)—as the Parties agreed to in the instant case—<u>*the employee participation rate skyrockets*</u>. For example:

- *Boyer v. Hi-Lex America, Inc., et al.*, Case No. 23-cv-11429 (E.D. Mich.) (administrator declaration stating that "**88.55%** of the participating plaintiffs negotiated their Settlement Checks to claim over 80% of the Net Settlement Amount.") (***Exhibit 3***);

- *McCaskill v. Samsung SDI America, Inc.*, Case No. 24-cv-11719 (E.D. Mich.) (administrator declaration stating that "**83.67%** of the employees chose to release all claims against Defendant for unpaid

overtime wages they may have been owed under federal overtime laws to participate and claimed 91.67% of the Net Settlement Amount.") (***Exhibit 4***);

- *Harris v. Armada MI OPCO LLC, et al.*, Case No. 23-cv-10319 (E.D. Mich.) (administrator declaration stating that "**63.53%** of the Eligible Employees negotiated their Individual Settlement Payments to claim 76.24% of the Net Settlement Amount.") (***Exhibit 5***);

- *Turner v. Creative Foam Corporation*, Case No. 24-cv-10629 (E.D. Mich.) (administrator declaration stating that "[o]f the 1,367 checks sent to Plaintiffs, 832 checks totaling $54,569.17 were claimed [**60.86%**] and 535 checks totaling $17,874.22 were unclaimed") (***Exhibit 6***); and

- *Gray v. The Shyft Group USA, Inc.*, Case No. 23-cv-11336 (E.D. Mich.) (administrator declaration stating that "**50.24%** of the Eligible Employees claimed 64.97% of the distributed Net Settlement Amount.") (***Exhibit 7***).

Here, the Parties structured a fair and reasonable FLSA settlement to yield a maximum participation rate, and they fully expect one. The one-step settlement process reached by the Parties most effectively advances the remedial goals of the FLSA because significantly more workers will receive a settlement payout. A higher participation rate will also provide significantly more releases and certainty to Defendant.

### D. Courts routinely find it appropriate for putative collective members to join an FLSA settlement through check cashing

Parties resolving FLSA-only actions where § 216(b) notice has not yet issued often structure the settlement as a one-step process so that employees receive notice of the settlement along with their settlement checks and then join in

the settlement by signing and cashing their check. Courts commonly use their broad discretion to approve this streamlined process, which increases participation rates (discussed *infra*), provide a greater number of releases to the defendant, and minimize costs relative to requiring a separate consent form before settlement approval and/or distribution of settlement funds. *See e.g.*, *Pieber v. SVS Vision, Inc*., 2022 WL 687248 (E.D. Mich. Mar. 2, 2022) ("The one-step approval process requested is appropriate because it satisfies all procedural and substantive prerequisites for approval of an FLSA collective action."); *Pham v. QuadGen Wireless Sols., Inc.*, 2020 WL 13682299 (E.D. Pa. Mar. 3, 2020) (noting that the process of opting in through check cashing is "fair and equitable to all Parties and eliminates the need for a separate claim form"); *Sheikh v. Align Commc'ns, Inc*., 2017 WL 192956 (S.D.N.Y. Jan. 18, 2017) ("Although members of the FLSA Collective are statutorily required to opt-in in order to participate, there is no reason to require them to submit a claim form as well . . . The parties can include release language either on the check or appended to the check if they desire."); *Sarinana v. DS Waters of Am., Inc.*, 2014 WL 12770237 (N.D. Cal. June 9, 2014) (expressing "concern regarding the use of a claims process (which will likely lower the response rate)" and suggesting that the parties could "accommodate [the opt-in] requirement" by issuing checks with "a statement . . . that signing and cashing the check shall be construed as an opt-in for purposes of the FLSA").

### E. The Third Circuit recently held that opt-in consent forms are not required to release FLSA claims

In *Lundeen v. 10 W. Ferry St. Operations LLC*, No. 24-3375, 2025 WL 2935340 (3d Cir. Oct. 16, 2025), the parties in a hybrid class and collective action reached a settlement. The district court denied approval of the settlement because it required class members who did not "opt-in" to FLSA collective to release their FLSA claims. The court then denied employee's motion for reconsideration and certified the following question for interlocutory appeal: "[W]hether Section 216(b) of the Fair Labor Standards Act permits a party to obtain the release of unasserted FLSA claims through a Rule 23(b)(3) opt-out class settlement."

On appeal, the Third Circuit held that the FLSA section establishing the opt-in mechanism for litigating FLSA claims does not bar the release of unasserted FLSA claims in a court-approved opt-out class action settlement:

> At all events, the District Court's reading of § 216(b)'s history was mistaken. Although Congress originally enacted the FLSA to safeguard employees, Congress did not have worker-protection in mind when it later adopted the opt-in mechanism. *See generally Knepper*, 675 F.3d at 253–57 (providing a comprehensive overview of § 216(b)'s adoption). In 1946—eight years after the FLSA was enacted—the Supreme Court held that "portal-to-portal" time, such as walking to work on the employer's premises, qualified as compensable work under the Act. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 691, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). That decision unleashed thousands of lawsuits seeking back pay—nearly all of which were so called "representative actions" initiated by third-party union officials who lacked any stake in the actions. *Knepper*, 675 F.3d at 255.

> It was against that backdrop of " 'excessive and needless litigation' " and the " 'wholly unexpected liabilities' " it imposed for employers, that Congress passed the Portal-to-Portal Act of 1947[9]—amending § 216(b) to require written consent before an employee could join an action. *Id.* at 255 (citation omitted). Thus, Congress created the opt-in scheme, not as a worker-protection measure but "primarily as a check against the power of unions" and a bar to "one-way intervention" whereby plaintiffs could wait for a favorable outcome before choosing to opt in and be bound by the judgment. *Id.* at 260; *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) (stating that the opt-in requirement was added "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions"). Accordingly, we reject the view that permitting the release of unasserted FLSA claims in a Rule 23(b)(3) settlement undermines the congressional purpose of the Portal-to-Portal Act.

*Id*. at *5-6.

The *Lundeen* decision makes clear that putative FLSA collective members can effectively release their claims even without submitting a consent form to opt-in to an FLSA collective action.[1] This holding strongly supports the Parties' position that the one-step settlement structure in the instant case meets the FLSA requirements.

[1] Notably, unlike in the Rule 23 settlement process, there is no objection process in FLSA settlements, and no right to appeal. In this case, if any Eligible Employee disagrees with the terms of the settlement or does not want to participate in the settlement, they are free to simply not cash or deposit their settlement check and they retain all rights under the FLSA.

### F. Some district courts have found it inappropriate for putative collective members to join an FLSA settlement through check cashing

As this Court pointed out during the approval hearing, some courts have found it improper to equivocate merely cashing a settlement check with filing a written consent with the court. In *O'Bryant v. ABC Phones of North Carolina, Inc*., 2020 WL 7634780, *2 (W.D. Tenn. Dec. 22, 2020), the district court initially rejected the parties' settlement because, *inter alia*: (1) "[t]he opt-in procedures were statutorily deficient in that merely cashing a check was not equivalent to filing a written notice with the Court"; and (2) "[t]he agreement requested that the Court dismiss the action before the opt-in plaintiffs had joined the action." *Id*. at *2. The parties ultimately reformed their settlement to include a two-step process (among many other changes), and the settlement was approved. *Id*. at *16.

Here, if the Court's concerns from *O'Bryant* remain, those concerns can be easily satisfied by filing copies of endorsed checks with the Court, and then dismissing the case after that filing. *See Nix v. Adams Bevs. of N.C., LLC,* No. 19-cv-00669, 2021 U.S. Dist. LEXIS 73333, at *2 (W.D.N.C. Apr. 15, 2021) (approving "the Parties' proposed method of filing Check Opt-in Forms with the Court as fair, reasonable, and sufficient to constitute a consent to join the Lawsuit, as required by 29 U.S.C. § 216(b), on behalf of each Participating Collective Member"); *Villar v. AHRC Home Care Servs., Inc.*, 2020 WL 6538750 (S.D.N.Y.

Nov. 6, 2020) (approving settlement process where "copies of all Settlement Checks will be submitted to the Court under seal, and a list of all individuals that have endorsed, deposited and cashed their Settlement Checks shall be publicly filed on the docket" before the case is deemed closed resolved issues "regarding the settlement's compliance with the FLSA and Cheeks"); *Hart v. Movement Mortg., LLC*, 2016 WL 11756816, at *3 (C.D. Cal. June 28, 2016) ("At the conclusion of the check cashing period, the claims administrator will make a single filing that contains 'copies of all the check endorsements signed by Class Members, which constitutes those Class Members' consent to join the FLSA action.' The Court finds that this process satisfies the express opt-in requirements of the FLSA.").

The Parties are amenable to filing copies of each settlement check endorsed by the Participating Plaintiffs and subsequently seeking dismissal of the case.

**III. Conclusion**

The Court should exercise its broad discretion to approve the settlement. No one is prejudiced by the one-step process and it is procedurally compliant with the FLSA. The Parties are also agreeable to filing the endorsed checks and subsequently dismissing the case. If the parties are required to reform their settlement into a two-step process, many employees will never bother to submit a consent form and ultimately will not claim their earned wages, and those who do

submit consent forms will experience a significant delay in receiving payment. Such an outcome would work against the remedial goals of the FLSA. For the reasons stated herein, the Parties respectfully request that the Court grant the Parties' Renewed Joint Motion for Approval of FLSA Settlement.

Dated: October 30, 2025

Respectfully submitted,

*/s/ Jesse L. Young*

Jesse L. Young (P72614)
**SOMMERS SCHWARTZ, P.C.**
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

*Attorneys for Plaintiffs*

*/s/ Brett J. Miller (with consent)*

Brett J. Miller (P68612)
Blaine Veldhuis (P78840)
**Butzel Long**
150 W. Jefferson, Ste. 100
Detroit, MI 48226
(313) 225-5316
millerbr@butzel.com
veldhuis@butzel.com

*Attorneys for Defendant*